IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VARREL E. MITCHELL,

                    Plaintiff,

                                             Civ. Action No.
        vs.                                  9:06-CV-0186 (GLS/DEP)

VINCENT IGOE,[1] ALBANY COUNTY
SHERIFF'S DEPUTY, *et al.,*

                    Defendants.

_____

APPEARANCES:                                 OF COUNSEL:

FOR PLAINTIFF:

VARREL E. MITCHELL, *Pro Se*
03-A-4497
Livingston Correctional Facility
PO Box 49
Rt. 36, Sonyea Road
Sonyea, NY  14556

FOR DEFENDANT IGOE:

ROCHE, CORRIGAN,                             ROBERT P. ROCHE, ESQ.
McCOY & BUSH
36 South Pearl Street
Albany, NY  12207

_____

[1]      Deputy Igoe is named in plaintiff's complaint as "Icoe".  The clerk's office will be directed  to adjust its records to reflect the correct spelling of that defendant's last name as "Igoe".

<u>FOR REMAINING DEFENDANTS</u>:

HON. ANDREW M. CUOMO                    STEPHEN M. KERWIN, ESQ.
Attorney General of the State          ASST. ATTORNEY GENERAL
of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Varrel E. Mitchell, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis* ("IFP"), has commenced this

action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights.

In his complaint, which names as defendants both state corrections

employees and affiliates of the Albany County Sheriff, plaintiff alleges that

the entire court file stemming from his Albany County conviction for

assault, reckless endangerment, and endangering the welfare of a child

was conveyed by Albany County officials to state corrections employees,

who shared its contents freely with Mitchell's fellow prison inmates,

encouraging them to harm the plaintiff based upon the nature of his

conviction, yet deprived him of the file for use in connection with a pending

appeal from his conviction, thereby interfering with his access to the

courts.[2]  Plaintiff asserts that these actions represent violations of his rights under the First and Eighth Amendments to the United States Constitution, and as relief seeks recovery of $50 million dollars in compensatory damages and an additional $25 million dollars in punitive damages, as well as declaratory and injunctive relief.

Currently pending before the court in connection with this action are four motions.  Both the state agency defendants and defendant Igoe, who is separately represented, have moved for the entry of summary judgment dismissing plaintiff's claims on the merits and additionally, in the case of the state defendants, based upon plaintiff's alleged failure to fully exhaust available administrative remedies before commencing suit.  Plaintiff has responded to each of those motions by submitting papers in opposition to defendants' motions and in support of cross-motions for the entry of summary judgment in his favor on the claims contained within his complaint.

---

[2]      Among the defendants originally named in plaintiff's complaint are Albany County Court Judge Thomas Breslin, then-Attorney General Eliot Spitzer, Deputy Commissioner and Chief Counsel of the New York State Department of Correctional Services ("DOCS") Anthony Annucci, Esq.; Brian Malone, Inspector General of the DOCS; Lieutenant Kenneth McLaughlin, Director of Operations in the DOCS Inspector General's office; and David Soares, Esq. of the Albany County District Attorney.  Dkt. 1.  Those defendants, however, were ordered dismissed from the action *sua sponte* by the court on February 21, 2006.  Dkt. No. 4.

Having carefully reviewed the record now before the court, I find that while there exists triable issues of fact surrounding the state defendants' procedural defense of failure to exhaust, no reasonable factfinder could conclude that plaintiff's rights were abridged by defendants, and therefore recommend the entry of summary judgment dismissing plaintiff's complaint in its entirety on the merits.

I.     BACKGROUND[3]

Plaintiff is a prison inmate entrusted to the care and custody of the DOCS.  *See generally,* Complaint (Dkt. No. 1).  Plaintiff's incarceration stems from a sentence of two consecutive seven-year prison terms imposed on August 14, 2003 in Albany County Court.  *Id.* ¶ 2.  While upon being placed into DOCS custody Mitchell was initially designated to the Downstate Correctional Facility ("Downstate"), in or about late September or early October of 2003 he was transferred into the Coxsackie Correctional Facility ("Coxsackie"), where most of the relevant events occurred.  *Id.* ¶¶ 9-12.

---

[3]     In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of plaintiff. *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV 134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007)(citations omitted).  In the event the record discloses the existence of conflicting evidence regarding an issue, the disparity will be noted.

According to plaintiff, at the time of sentencing the trial court provided local corrections officials with his "paperwork" and directed that it be conveyed to state authorities.  Complaint (Dkt. No. 1) ¶ 4.  Plaintiff was subsequently transported by defendant Igoe and another transport partner to Downstate, where he and certain materials were transferred into the custody of state officials.  *Id.* ¶ 9.  On his arrival at Downstate plaintiff was asked whether he would like to be placed into protective custody, but refused that offer.  *Id.* ¶ 10.

Shortly after his arrival at Downstate, plaintiff was transferred into Coxsackie.  Complaint (Dkt. No. 1) ¶ 12.  At the time of that transfer DOCS officials also forwarded documents to corrections officials at Coxsackie.  *Id.*

Nowhere in his complaint does plaintiff claim to have had access to the materials conveyed by Albany County corrections personnel to those at Downstate, and ultimately to Coxsackie, although he does state that at one point when the top of a box containing the papers was blown off he was able to see that its contents comprised that "same bulky paperwork" that accompanied him at the time he left Albany.  *Id.*  Defendants, on the other hand, maintain that upon sentencing, as was customary, Albany

County Court officials provided the Albany County Sheriff with an order of commitment and that it was this document, together with other customary, appropriate items as plaintiff's medical records, fingerprints or fingerprint cards, custodial transfer sheet, and any major disciplinary actions from the forwarding facility, that would have accompanied him to Downstate.[4]  *See, e.g.,* Igoe Aff. (Dkt. No. 45-6) ¶¶ 4-7; Lawrence Aff. (Dkt. No. 45-6, 45-7) ¶¶ 4-6.

Although plaintiff experienced no difficulties at Coxsackie during the first few months there, in January of 2004 he began to suffer harassment from prison officials and fellow inmates.  *See, e.g.*, Complaint (Dkt. No. 1) ¶¶ 14-15, 30-32.  Plaintiff attributes the harassment to the fact that his court records were shared by corrections officers with other employees and inmates at Coxsackie for the purpose of making them aware of the nature of his conviction.  *Id.* ¶¶ 18-28.

In the months following his transfer into Coxsackie, plaintiff pursued an appeal of his conviction to the New York State Supreme Court Appellate Division, Third Judicial Department, initially through assigned

---

[4]      While the two transporting officers have no independent recollection of the relevant events, in their affidavits they recounted their custom and practice and noted that had there been any deviation in this case, as plaintiff alleges, it would have stood out in their minds.  Igoe Aff. (Dkt. No. 45-6) ¶¶ 8-9.  Lawrence Aff. (Dkt. No. 45-6) ¶¶ 7-8.

counsel, and later acting *pro se*.  *See* Complaint (Dkt. No. 1) ¶¶ 14,16;

*see also* Plaintiff's Exhibits (Dkt. No. 51-3) Exhs. B, Q and S.   To further

that endeavor, plaintiff made requests to certain of the defendants at

Coxsackie to produce the file received when Mitchell was transferred into

the facility, in order to permit its use in connection with the pending

appeal.  Mitchell Affidavit (Dkt. No. 53) ¶¶25-26.  Despite those requests,

the file was not produced to plaintiff by prison officials.  *Id.*

Plaintiff maintains that while at Coxsackie defendants continued to

harass him, and to encourage inmates to cause him harm as a result of

the nature of his conviction.  *See*, *e.g.,* Complaint (Dkt. No. 1) ¶¶ 18-28.

Plaintiff also maintains that defendants, and in particular defendant

Glidden, interfered or attempted to interfere with his ability to pursue his

appeal by terminating his position working in the law library.  *Id.* ¶ 31.

## II.   PROCEDURAL HISTORY

On February 10, 2006 plaintiff filed his complaint in this action,

accompanied by an IFP application and inmate authorization form, and

was granted IFP status shortly thereafter.  Dkt. Nos. 1-4.  Named as

defendants in plaintiff's complaint were Albany County Court Judge

Thomas Breslin; Mr. Igoe, an Albany County Sheriff's Deputy; John Doe,

defendant identified as "Thin Man (Albany County Sheriff Deputy)"; Gary

H. Filion, the former superintendent at Coxsackie; Kim Gerber, a school

principal at the facility; A. Green, an inmate records coordinator; Todd

Wilhelm, a senior counselor; Neal Crystal and Mr. Ryan, two corrections

counselors; the Rev. Lewis, the Protestant chaplin at Coxsackie;

Corrections Officers Daniel Glidden, Mr. Hans, Mr. McIntyre, Mr. Conklin,

Mr. Jaconis, Mr. Kane, and Ms. Farqar; Thomas Delsantis, a transitional

services coordinator; Eliot Spitzer, the former New York State Attorney

General; Anthony Annucci, Esq., Deputy Commissioner and Counsel for

the DOCS; Brian Malone, the former DOCS Inspector General; Kenneth

McLaughlin, former director of operations for the DOCS Inspector

General; and Albany County District Attorney David Soares.  Plaintiff's

complaint sets forth eleven delineated causes of action which, while not

specifically referencing the constitutional provisions allegedly violated,

appear to assert claims sounding in failure to protect plaintiff from harm

and interference with his access to the courts.

Following joinder of issue and the completion of discovery, both the

state defendants and defendant Igoe moved for the entry of summary

judgment dismissing plaintiff's complaint.[5]  Dkt. Nos. 44-45, 47.  In their

motion, the state defendants argue that plaintiff's claims are procedurally

barred, based upon his failure to exhaust available administrative

remedies, and in any event lack merit.  Dkt. No. 44.  Defendant Igoe's

motion papers assert only the lack of merit of plaintiff's claims as a basis

for his motion.  Dkt. No. 45.  Plaintiff has responded in opposition to

defendants' motions and in support of cross-motions for summary

judgment against both sets of defendants, Dkt. Nos. 51, 52, 53, and

defendant Igoe has since submitted a brief reply.  Dkt. No. 54.

The parties' motions, which are now ripe for determination, have

---

[5]        The firm of Roche, Corrigan, McCoy & Bush, which has appeared for defendant
Igoe, also represents defendant John Doe, and asserts that the true identity of that
defendant is John Lawrence.  That individual, however, has never formally been joined
as a defendant in the action, nor has he been served or properly waived the
requirement of service, and as such to this point remains a non-party.  Rule 4(m) of the
Federal Rules of Civil Procedure authorizes dismissal where a summons and
complaint is not served within 120 days after filing of the complaint, absent a showing of
good cause.   Fed. R. Civ. P. 4(m); *Schuster v. Nassau Cty.*, No. 96 Civ. 3635, 1999
WL 9847, at *1 (S.D.N.Y. Jan. 11, 1999) (Rule 4(m) authorizes dismissal where no
service within 120 days after filing of the complaint); *Romand v. Zimmerman*, 881 F.
Supp. 806, 809 (N.D.N.Y. 1995) (McAvoy, C.J.) (120-day period for service of a
summons and complaint by a plaintiff under Fed. R. Civ. P. 4(m) applies to *pro se*
plaintiffs as well as those represented by counsel); *see also*, *e.g., Michelson v. Merrill
Lynch, Pierce, Fenner & Smith, Inc.*, 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (citation
omitted) (court lacks jurisdiction until defendants properly served with summons and
complaint).  That period is further restricted by the local rules of this court, which
require that service be effected within sixty days.  *See* Northern District of New York
Local Rule § 4.1(b).  Inasmuch as plaintiff has failed to identify and take steps to
obtain jurisdiction over the John Doe defendant, I recommend dismissal of his claims
against him as well.

been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at

2510.

A moving party seeking the entry of summary judgment bears an

initial burden of demonstrating that there is no genuine dispute of material

fact to be decided with respect to any essential element of the claim in

issue; the failure to meet this burden warrants denial of the motion.

*Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391

F.3d at 83.  In the event this initial burden is met, the opposing party must

show, through affidavits or otherwise, that there is a material issue of fact

for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at

2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se*

plaintiffs are entitled to special latitude when defending against summary

judgment motions, they must establish more than mere "metaphysical

doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see*

*Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting

obligation of court to consider whether *pro se* plaintiff understood nature

of summary judgment process).

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.   Failure To Exhaust

In defense of plaintiff's claims, the state defendants have asserted plaintiff's failure to exhaust available administrative remedies before commencing this action.[6]  *See* State Defendants' Answer (Dkt. No.  33) ¶ 10.  Those defendants now move for the entry of summary judgment dismissing plaintiff's complaint on this procedural basis, as a matter of law.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct.

---

[6]      Failure to exhaust available remedies, as required under the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), is an affirmative defense and, accordingly, may be waived. *Richardson v. Goord*, 347 F.3d 431, 433 (2d Cir. 2003).  Since defendant Igoe did not assert the defense in his answer, *see* Dkt. No. 33, he is not now positioned to raise the issue.

983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the PLRA, imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007)(Tragers, J.).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into courtl[,]" and to improve the quality of inmate suits filed through the production of a "useful administrative record."  *Jones v. Bock,* 549 U.S. 199, 204, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

In the event a defendant named in an action subject to the PLRA establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, S. J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA. *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis

omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.[7]  *Macias*, 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).  Under the prescribed algorythm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times.  *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense.  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.  In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether special circumstances nonetheless exist and "have been plausibly alleged" to

_____

[7]     As will be seen, whether the *Hemphill* test survives following the Supreme Court's decision in *Woodford*, has been a matter of some speculation.  *See, e.g.*, *Newman v. Duncan,* No. 04-CV-395, 2007 WL 2847304, at * 2 n.4 (N.D.N.Y. Sept. 26, 2007) (McAvoy, S.J. and Homer, M.J.) .

justify the plaintiff's failure to comply with the applicable administrative procedural requirements.[8]  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.

>        a)        Availability of Remedy

New York prison inmates are subject to an Inmate Grievance Program ("IGP") established by the DOCS and recognized as an "available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (Daniels, J.)(citing *Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review process.  First, a written grievance is submitted to the Inmate Grievance Review Committee ("IGRC") within twenty-one days of the incident.[9]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's

_____

[8]        In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap.  *See Hargrove*, 2007 WL 389003, at *8 n.14; *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

[9]        The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

determination and issues a decision.  *Id.* § 701.5(c).  The third level of the

process affords the inmate the right to appeal the superintendent's ruling

to the Central Office Review Committee ("CORC"), which makes the final

administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a

basis to excuse non-compliance with this prescribed process, only upon

exhaustion of these three levels of review may a prisoner seek relief

pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11,

2000)(Sweet, J.).

Despite an inmate's entitlement in most instances to file and pursue

a grievance in accordance with the IGP, there are circumstances under

which the grievance procedure nonetheless is deemed not to have been

available to an inmate plaintiff.  *See Hemphill*, 380 F.3d at 687-88.  Thus,

for example, "[e]xhaustion may be considered unavailable in situations

where plaintiff is unaware of the grievance procedures or did not

understand it, . . . or where defendants' behavior prevents plaintiff from

seeking administrative remedies."  *Hargrove,* 2007 WL 389003, at *8

(citations omitted) (noting, for example, that a defendant's failure to

advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable).  When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Hemphill*, 38 F.3d at 688 (quotations and citations omitted); *see also Hargrove,* 2007 WL 389003, at *8 n. 15.

### b)    Presentation of Defense/Estoppel

The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Hemphill,* 380 F.3d at 686 (citations omitted).

### c)    Special Circumstances

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special

circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Hemphill*, 380 F.3d at 688).

Analysis of the DOCS defendants' exhaustion defense presents somewhat of a conundrum, based upon the equivocal nature of available evidence bearing upon the issue of whether plaintiff filed and pursued to completion grievances related to the matters set out in his complaint, or whether his efforts to do so were thwarted by prison officials.  In his complaint, plaintiff alleges that he did grieve the matters set forth in his complaint and, in response to a question regarding the final result of the grievance, tersely stated that "[i]t is being investigated."  Complaint (Dkt. No. 1) ¶ 4.  Based upon this allegation alone, plaintiff's complaint would

19

be subject to dismissal since complete exhaustion, including appeal to and disposition by the CORC, must be accomplished prior to commencement of suit.  *Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001) ("[E]xhausting administrative remedies after a complaint is filed will not save a case from dismissal."); *see also Pettus*, 2006 WL 2639369, at *1.

In his responding memorandum, plaintiff asserts that his efforts to file grievances regarding the matter were impeded, in that representatives of the IGRC refused to accept his grievances unless he agreed to amend them to their liking.  Plaintiff's Memorandum (Dkt. No. 51) at pp. 6-14. Statements contained within a memorandum, however, without proper evidentiary support, do not constitute competent evidence upon which a court may base its ruling upon a motion for summary judgment. *Commerce & Industry Ins. Co. v. Vulcraft, Inc.*, No. 97 CIV 2578, 1998 WL 823055, *11 (S.D.N.Y. Nov. 20, 1998)(Dolinger, M.J.).

Unfortunately plaintiff's supporting affidavit, filed only at the prompting of the court well after submission of his opposition and cross-motion papers, fails to make reference to this fact.  *See* Plaintiff's Aff. (Dkt. No. 53).  The allegation is, however, contained within plaintiff's statement pursuant to Local Rule 7.1(a)(3), which states that plaintiff

attempted to exhaust available administrative remedies but was precluded from doing so, and that three of his grievances "were routinely rejected by [sic] IGRC for failure to alter [plaintiff's] complaint."  Plaintiff's Local Rule 7.1(a)(3) Statement (Dkt. No. 51-2) ¶¶ 1-3.  That allegation stands uncontradicted by the defendants, who opted not to file a statement in response to plaintiff's Rule 7.1(a)(3) Statement supporting his cross-motion for summary judgment.[10]  This failure could result in acceptance of the allegations contained in plaintiff's Rule 7.1(a)(3) Statement as true, for purposes of the pending motion.

There is also indication in plaintiff's exhibits of some efforts on his part to file grievances regarding certain matters relevant to his claims.

_____

[10]      Local Rule 7.1(a)(3) provides, in relevant part, that in connection with a motion for summary judgment, which can include a cross-motion for such relief,

> [t]he opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs.  The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.

N.D.N.Y.L.R. 7.1(a)(3) (emphasis in original).

One grievance, no. CX-10058-04, filed on February 10, 2004, was

processed at the local level, resulting in a finding of mootness in light of

the fact that Mitchell, who was complaining of removal from his library

position, was apparently scheduled to remain assigned to the law library.

*See* Plaintiff's Exhibits (Dkt. No. 51-3) Exh. 6-7.  A second grievance, also

complaining of a failure to assign him to the law library, was apparently

filed on October 4, 2005, but was the subject of an informal resolution

whereby plaintiff was advised to amend his grievance and indicated that

he would do so "as soon as possible" by signing a document reflecting his

acceptance of that resolution.  *Id.* Exh. 32.  The only other indication in the

record now before the court of the filing of a relevant grievance concerns

yet another grievance entitled "law library" signed by the plaintiff on

January 20, 2006, seeking the file associated with his criminal prosecution

and requesting that he be reinstated to his law library position.  Plaintiff's

Exhibits (Dkt. No. 51-3) Exhs. 38, 39.  There is no indication in the record

as to whether that grievance was  processed, nor is any information

provided regarding its outcome.

Based upon the record now before the court it is uncontradicted that

plaintiff did not pursue to completion, by taking an appeal to the CORC,

any grievance related to the matters now set forth in his complaint.  There are, however, potential issues of fact surrounding the matter, and in particular whether defendants should be estopped from raising failure to exhaust as a defense in light of their actions.  I therefore recommend denial of this portion of the DOCS defendants' summary judgment motion.

C.    Disclosure Of Information Regarding Plaintiff's Conviction

At the center of plaintiff's quarrel with defendants is his claim that they received and, in turn, disseminated to DOCS employees and inmates within Coxsackie information regarding his criminal conviction and its nature.  Plaintiff maintains that as a result of that disclosure he experienced recrimination, and faced a danger of assault and abuse from fellow inmates.  Plaintiff asserts that by their actions defendants have violated their constitutionally mandated obligation to protect him from harm.

1.    Eighth Amendment

Unquestionably, under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates within their custody; this duty includes within it an obligation to protect prisoners from harm caused by fellow inmates.  *Farmer v. Brennan*, 511

U.S. 825, 833-34, 114 S. Ct. 1970, 1976-77  (1994) (citations omitted);

*see also Matthews v. Armitage*, 36 F. Supp. 2d 121, 124 (N.D.N.Y. 1999)

(Homer, M.J.) (citing, *inter alia*, *Farmer*).  When examining a failure to

protect claim under the Eighth Amendment, a court must determine

whether the inmate has demonstrated that 1) he or she was incarcerated

under conditions posing a substantial risk of serious harm, and that 2)

prison officials exhibited deliberate indifference to the inmate's plight.

*Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Matthews*, 36 F.

Supp. 2d at 124-25; *Coronado v. Lefevre*, 886 F. Supp. 220, 224

(N.D.N.Y. 1995) (Scullin, J.).  As can be seen, this analysis entails both an

objective and subjective inquiry.

> a.    <u>Objective Test</u>

In objective terms, a plaintiff must prove that an alleged deprivation

is "sufficiently serious" such that it denied him or her the "minimal civilized

measure of life's necessities."  *Dawes v. Walker*, 239 F.3d 489, 493-94

(2nd Cir. 2001) (internal quotations and citations omitted), *overruled on*

*other grounds* by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct.

992 (2002).  Specifically, as noted above, in situations where an inmate's

safety is at issue, that person must demonstrate that he or she was

incarcerated under conditions posing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Dawes*, 239 F.3d at 493; *Matthews*, 36 F. Supp. 2d at 124-25.

b.    Subjective Test

To demonstrate that defendants were deliberately indifferent to his or her plight, a plaintiff must show that prison officials actually knew of, but intentionally disregarded, an excessive risk to his or her health and safety – "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Matthews*, 36 F. Supp. 2d at 124-25.

2.    Fourteenth Amendment

Claims involving the alleged failure of prison officials to protect an inmate from harm are also subject to review under the Fourteenth Amendment's substantive due process clause.  Though the requisite mental state for establishing a Fourteenth Amendment failure to protect claim is somewhat unclear, it is at least apparent that to be legally cognizable under that provision, the actions alleged on the part of a defendant must transcend mere negligence.  *Davidson v. Cannon*, 474

U.S. 344, 347-48, 106 S. Ct. 668, 670 (1986) (lack of due care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent); *Daniels v. Williams*, 474 U.S. 327, 323-23, 106 S. Ct. 662, 665-66 (1986) (same); *Morales v. New York State Dep't of Corrs.*, 842 F.2d 27, 30 (2nd Cir. 1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury); *Abdul-Matiyn v. New York State Dep't of Corr. Servs.*, 871 F. Supp. 1542, 1546-47 (N.D.N.Y. 1994) (Chin, J.) (citing *Morales*, 842 F.2d at 30).

Plaintiff's claims regarding the alleged dissemination of information suffer from two legal deficiencies.  First, plaintiff has provided no concrete evidence to establish that the information was distributed, or which of the defendants actively participated in that alleged endeavor.[11]  Much of the factual support offered for plaintiff's claims is the result of sheer surmise on his part concerning what records were conveyed from the Albany

---

[11]     It must be noted that personal involvement in a constitutional deprivation is a prerequisite to a finding of liability under section 1983.  *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

County Court to Coxsackie, and conclusory allegations wholly lacking any evidence to substantiate his claims that certain individuals shared with inmates information regarding his conviction.  *See, e.g.* Complaint (Dkt. No. 1) ¶ 20 ("counselors Wilhelm, Ryan and Crystal were constantly showing inmates 'a file' contained 'on the computer,' and, documents that declare that the plaintiff 'rape and murdered' his daughter and/or 'raped' his daughter and other young girls in Albany. . .").  Such conclusory allegations "that shock but have no meaning" are insufficient to support a claim under section 1983.  *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).  Plaintiff's claims regarding file sharing represent little more than conjecture, and do not support his claim that defendants violated his constitutional rights under the Eighth Amendment.

The second deficiency in plaintiff's Eighth Amendment claim stems from his failure to establish that he experienced substantial risk of serious harm due to defendants' alleged disclosures.  While plaintiff asserts in broad, conclusory terms that he was subjected to potential danger as a result of defendants' actions, he offers no proof from which a reasonable factfinder could conclude he was incarcerated under conditions posing a substantial risk of serious harm.  Plaintiff does not offer dates and names

and fails to provide any specifics regarding any alleged assault at the hands of inmates, nor does he tender medical records to substantiate that he suffered injuries as a result of any such assault.  Moreover, plaintiff's claim of danger is belied by the fact that when offered protective custody at Downstate, he refused, and there is no indication that he ever requested protective custody while at Coxsackie.  Complaint (Dkt.1) ¶10. Plaintiff's claims of danger at Coxsackie are further undermined by his acknowledgment that for the first few months of his confinement there, he experienced no problems.  *Id.*

Having carefully surveyed the available evidence, I conclude that plaintiff has failed to establish that any of the defendants subjected him to cruel and unusual punishment or violated his substantive due process rights by placing him in substantial risk of danger or serious harm. Accordingly, I recommend that each of his causes of action which include such a claim be dismissed.

D.      Right of Privacy

Although plaintiff's complaint does not directly allege a constitutional violation of his right to privacy, generously construed his complaint could be considered as asserting a claim that by disclosing information

concerning his prosecution and conviction, defendants violated his right to privacy.   While some argue that such a breach of confidentiality claim falls within the penumbra of the Eighth Amendment, it is generally thought that the better view is that such claims should be analyzed under general constitutional principles, using guidelines endorsed by the Second Circuit in *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999).  *See , e.g., Lee v. DelFavero*, 9:04 CV 382, 2005 WL 2387820, *3-4 (N.D.N.Y. Sept. 28, 2005 (McAvoy, S. J. and Peebles, M.J.); *see also, Cortes v. Johnson*, 114 F. supp. 2d 182, 185 (W.D.N.Y. 2000).

The question of whether plaintiff suffered a violation of his constitutionally protected right to confidentiality begins with the important proposition that "[p]rison inmates do not shed all fundamental protections of the Constitution at the prison gates."  *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994)(citing *Turner v. Safely*, 482 U.S. 78, 95, 107 S. Ct. 2254, 2265 (1987)).  Instead, prisoners maintain rights which are not inconsistent with their position as inmates, or with "legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Among the rights retained by prison inmates under certain

circumstances is the right of privacy regarding certain inherently

confidential matters.  Thus, for example, an inmate infected with the HIV

virus possesses a limited constitutional right to privacy regarding that

condition, although in certain circumstances that right yields to legitimate,

countervailing penological interests.  *Powell,* 175 F.3d at 112; *see also*

*Nicholas v. Miller,* 189 F.3d 191, 194 (2d Cir. 1999).

The facts surrounding plaintiff's conviction are not the sort of

information that falls within the scope of this limited protection.  Indeed,

plaintiff's conviction is a matter of public record, and thus does not fall

within the limited zone of privacy provided under such cases as *Powell*

and *Nicholas*.  *Doe v. Pataki*, 120 F.3d. 1263 (2d Cir. 1997)(citing *Werfel*

*v. Fitzgerald*, 23 A.D.2d 306, 310 (2d Dep't 1965))(noting the general New

York State policy of allowing unrestricted access to public records,

including criminal records.).

E.     Access To The Courts

The other chief component of plaintiff's complaint concerns

defendants' alleged refusal to provide him with his criminal file for

purposes of allowing him to perfect an appeal of his conviction.[12]  Plaintiff

---

[13]     Plaintiff's appears also to be contending that by terminating his position in the
law library defendants interfered with his right of access to the courts.  Plaintiff does

asserts that by their actions, defendants unlawfully interfered with his access to the courts.

Without question, an inmate's constitutional right to "meaningful" access to the courts is firmly established. *Bounds v. Smith*, 430 U.S. 817, 823, 97 S. Ct. 1491, 1495 (1977) (citations and internal quotation marks omitted). Although in *Bounds* the Supreme Court held that this right of access requires prison authorities "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law[,]" *id.* at 828, 97 S. Ct. at 1498, the Court later clarified that

> prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts. Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense.

*Lewis v. Casey*, 518 U.S. 343, 351, 116 S. Ct. 2174, 2180 (1996) (internal

---

not allege, however, that he not only was prevented from working in the library but was also completely denied access to the library for purposes of needed legal research. The constitution guarantees only meaningful access to law libraries, and does not entitle an inmate to a position working in a prison library. *Lewis,* 518 U.S. at 353, 116 S. Ct. at 2181.

quotations and citations omitted).  Instead, an inmate "must go one step

further and demonstrate that the alleged shortcomings in the library or

legal assistance program hindered his efforts to pursue a legal claim."  *Id.*

In other words, to establish a violation of the right of access to the courts,

a plaintiff must demonstrate that defendants' interference caused him or

her actual injury – that is, that a "nonfrivolous legal claim had been

frustrated or was being impeded" as a result of defendants' conduct.  *Id.*

at 353, 116 S. Ct. at 2181.

The evidence now before the court similarly fails to support plaintiff's

court access claim.  The record clearly reflects that efforts were made by

plaintiff, after his assigned appellate attorney was dismissed at his

request, to obtain records concerning his conviction for use on appeal.

Those efforts resulted in an exchange of written communications between

Mitchell and representatives of the Albany County Court reflecting that

certain of the necessary records were being prepared for that purpose.

Plaintiff's apparent claim is that prison officials possessed all of the

needed records, but refused to surrender them to him.  This claim,

however, fails on two fronts.  First, plaintiff's contention that all of the

necessary records were possessed by prison officials is, once again,

sheer surmise, and indeed is belied by the fact that certain of the required

records, including the trial transcript, had not even been prepared at the

time of his requests to prison officials, as reflected in various of plaintiff's

own exhibits.  *See, e.g.,* Plaintiff's Exhibits (Dkt. No. 51-3) Exhs. 16, 30.

Moreover, even if prison officials possessed every document necessary

for Mitchell to perfect his appeal, the court is unaware of any case which

imposes a duty upon the DOCS to provide such information to plaintiff; the

failure to do so therefore represents no deprivation of his constitutional

rights.

There is a second, equally fatal deficiency in connection with

plaintiff's court access claim.  As a necessary element of such a claim, a

plaintiff must establish the existence of prejudice, in the form of some

adverse consequence, resulting from defendants' actions.  While it is true

that plaintiff was apparently forced to request several extensions of time to

perfect his appeal to the Third Department due to the delay in his being

provided access to needed court records, those requests were granted.

There is no proof in the record that plaintiff's inability to obtain the

necessary records resulted in dismissal of his appeal or some other

adverse consequence sufficient to support a First Amendment court

access denial claim.

I therefore recommend that plaintiff's First Amendment claim be dismissed, both because he has failed to establish that defendants interfered with his access to the courts, and additionally based upon his failure to establish the existence of prejudice.

F.    Conspiracy

Plaintiff's eleventh cause of action alleges the existence of "a serious conspiracy to either have him hurt or prevent [his] appeal." Complaint (Dkt. No. 1) ¶ 81.   Since I am recommending dismissal of both plaintiff's failure to protect and his court access substantive claims, any cause of action for conspiracy to effectuate those alleged constitutional deprivations similarly fails.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604 (1970);  *Almonte v. Florio*, No. 02 Civ. 6722 (SAS), 2004 WL 60306, at * 4 (S.D.N.Y. Jan. 13, 2004)(Scheindlin, J.)("[A] conspiracy claim cannot exist in a vacuum.  A plaintiff alleging a conspiracy under section 1983 must prove an actual violation of constitutional rights.").  In any event, such a claim does not lie under the circumstances now presented.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff

must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983). Neither plaintiff's complaint nor the record before the court provides the identity of the parties to the alleged conspiracy, a showing of agreement or a "meeting of the minds", or any details as to the time and place of conspiracy or its objective.  Such deficiencies are fatal to plaintiff's conspiracy claim.  *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999).

Because plaintiff has asserted claims of conspiracy in only vague and conclusory terms, and, in the face of defendants' summary judgment motion, has failed to come forward with evidence to support such a conspiracy claim, I recommend its dismissal as a matter of law.  *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied*, 499 U.S. 937, 111

S. Ct. 1399 (1991); *Barr v. Abrams*, 810 F.2d at 363.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

In his complaint, plaintiff levels charges of wrongdoing on the part of both Albany County officials, including two sheriff's deputies and various DOCS officials, both in the central office and at Coxsackie.  Unfortunately, plaintiff's first claim, alleging that through their actions in sharing information regarding his conviction with fellow inmates at Coxsackie defendants violated his constitutional rights, is legally deficient both because he has failed to offer specific evidence from which a reasonable factfinder could conclude that defendants took such measures, and in any event since the record is lacking any evidence that as a result of defendants' alleged actions plaintiff was at substantial risk of serious harm.  Turning to plaintiff's second claim, concerning denial of access to the courts, the record similarly fails to include evidence from which a reasonable factfinder could conclude that defendants interfered with his right of access to the courts, nor is there any evidence now before the court suggesting that as a result of defendants' alleged actions he suffered prejudice.[13]  Accordingly, it is hereby respectfully

_____

[13]    In light of my recommendation that plaintiff's complaint be dismissed on the merits, I have not addressed defendants' alternative argument urging a finding that

RECOMMENDED, that defendants' motions for summary judgment, Dkt. Nos. 44 and 45, dismissing plaintiff's claims, be GRANTED, and plaintiff's complaint dismissed in its entirety, and that plaintiff's cross-motions for summary judgment, Dkt. Nos. 51 and 52, be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this Report and Recommendation upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:      April 28, 2009
            Syracuse, NY

---

they are entitled to qualified immunity from suit.